IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ERIC SHAW                                                                                    PLAINTIFF

v.                                         Civil No.: 6:18-CV-06056

CITY OF MALVERN, ARKANSAS;                                                    DEFENDANTS
HOT SPRING COUNTY;
DETECTIVE JARED CANTRELL;
DETECTIVE RINES;
SGT. JERRY FREEMAN;
NATIONAL PARK MEDICAL CENTER;
DR. AKBAR A. KHANAKBARA;
SPENCER L. O'BRIEN (registered nurse);
COURTNEY BRAISE (registered nurse);
CITY OF HOT SPRINGS, ARKANSAS;
DETECTIVE MARK FALLIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action provisionally filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for Report and Recommendation.

The case is before the Court for preservice screening under the provisions of the Prison Litigation Reform Act (PLRA). Pursuant to 28 U.S.C. § 1915A, the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

### I. BACKGROUND

Plaintiff filed his Complaint on June 18, 2018. (ECF No. 1). Plaintiff's alleges his constitutional rights were violated by the delay and denial of medical care for a gunshot wound to his right leg while in custody. (*Id*. at 6). Plaintiff alleges he was arrested by the Malvern Police Department on May 9, 2016, at 11:30 p.m., with a bleeding gunshot wound to his upper right thigh.

1

Plaintiff was taken to the Hot Spring County Jail, where he was booked. Neither the Malvern Police or the Hot Spring County Jail booking deputy called an EMT. Instead, Plaintiff was forced to wait for the Hot Springs Police Department to arrive and take him into custody, approximately one hour later. The Hot Springs police then drove past the Malvern hospital and drove approximately 35 minutes to the National Park Medical Center (NPMC), arriving at the Emergency Department of the hospital at 1:37 a.m. on May 10, 2016. (*Id*. at 6, 10). Plaintiff alleges he suffered emotional distress because he believed he would bleed to death before received medical attention. (*Id*.).

At NPMC, Plaintiff alleges Dr. Khanakbara, Nurse O'Brien, and Nurse Braise told him they could not see the bullet on the x-ray due to the swelling in his leg. Plaintiff alleges they deliberately left the bullet in his leg to cause him future discomfort. (*Id*.). Plaintiff attached radiology reports from NPMC stating the bullet could not be visualized, but that there were bullet fragments overlying the medial proximal tibia. (ECF No. 1 at 10, 12). Medical records indicate he was triaged, treated, discharged back to the police, and instructed to obtain follow-up care in two days. (ECF No. 1 at 10). The clinical impression was gunshot wound to an extremity and atrial fibrillation. (*Id.*).

Plaintiff proceeds against all parties in their individual and official capacities. (ECF No. 1 at 4). He seeks punitive damages. (ECF No. 1 at 7).

## II. LEGAL STANDARD

Under the PLRA, the Court is obligated to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or, (2) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded ... to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Even a *pro se* Plaintiff must allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

### III. ANALYSIS

#### A. Official Capacity Claims

Plaintiff fails to state any plausible official capacity claims against the City of Malvern, Hot Spring County, or the City of Hot Springs.[1] Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both. In *Gorman v. Bartch,* 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit Court of Appeals discussed the distinction between individual and official capacity suits. As explained by the Court in *Gorman*:

> "Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24-27, 112 S.Ct. at 361-62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25-27, 112 S.Ct. at 362."

---

[1] As discussed later in this Report and Recommendation, NPMC and the NPMC medical staff are not state actors.

*Gorman,* 152 F.3d at 914.

Here, Plaintiff has identified no policy or custom of the City of Malvern, Hot Spring County, or the City of Hot Springs which violated his rights. He, therefore, fails to state any plausible official capacity claims against those entities.

### B. Defendants Cantrell, Rine, Freeman and Fallis

Plaintiff fails to state any claims against Defendants Cantrell, Rine, Freeman, and Fallis. "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006)). Merely listing a Defendant in a case caption is insufficient to support a claim against the Defendant. *Krych v. Hass*, 83 F. App'x 854, 855 (8th Cir. 2003) (citing *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (per curiam) (court properly dismissed pro se complaint that was silent as to defendant except for his name appearing in caption).

Here, Plaintiff has alleged only that the Malvern Police and the Hot Springs Police delayed his access to medical care. He does not allege any specific facts of personal involvement by Defendants Cantrell, Rine, Freeman, and Fallis, instead merely listing them in the caption of the case. Plaintiff, therefore, fails to state any claims against these Defendants.

### C. NPMC and NPMC Medical Staff

Plaintiff's claims against NPMC and NPMC medical staff are subject to dismissal. Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that each defendant acted under color

4

of state law and that he or she violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

NPMC and the NPMC medical staff have been identified only as a private hospital and private medical staff. In *Montano v. Hedgepeth*, 120 F.3d 844 (8th Cir. 1997), the Eighth Circuit set forth the analysis to be applied in determining whether state action exists for purposes of § 1983. Specifically, the Court there said:

> In ascertaining the presence of state action, we must examine the record to determine whether "the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 2753, 73 L. Ed. 2d 482 (1982). Resolving this question entails a journey down a particularly fact-bound path, *see id*. at 939, 102 S. Ct. at 2754-55, but the Supreme Court has identified two legal touchstones to provide guidance along the way. To begin with, there can be no "fair attribution" unless the alleged constitutional violation was "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." *Id*. at 937, 102 S. Ct. at 2753. Furthermore, "the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Id*.; *see also Roudybush v. Zabel*, 813 F.2d 173, 176-77 (8th Cir.1987) (repeating two-part test).

*Montano*, 120 F.3d at 848.

In this case, Plaintiff has alleged only that he was treated at the NPMC Emergency Department by NPMC medical staff while he was in the custody of the Hot Springs Police. There is no allegation or documentation indicating that NPMC is anything other than a private hospital. There is also no allegation that the treatment was rendered pursuant to a contract between NPMC medical staff, or NPMC, and the Hot Springs Police Department or Hot Spring County Jail.

5

Applying the functional approach adopted by the Eighth Circuit in *Montano*, the Court believes private medical staff treating a detainee at a facility not associated with the prison and utilizing their independent medical judgment are not answerable to the state and do not act under color of state law for purposes of § 1983. *See e.g. Wittner v. Banner Health,* 720 F.3d 770, 777 (10th Cir. 2013) (Physician and nurse at private medical center were not state actors); *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 320 (S.D.N.Y. 2008) (private physician not state actor when he merely provided treatment in accordance with his professional medical judgment and was not under a state contract); *Sykes v. McPhillips*, 412 F. Supp. 2d 197, 204 (N.D.N.Y. 2006) (a physician who engaged in a single encounter with a prisoner presented for emergency treatment, which he was obligated under law to provide, is not a state actor).

Even if one were to assume *arguendo* that NPMC and NPMC medical staff are state actors, Plaintiff failed to state a plausible claim for denial of medical care. The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions

does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id.*

It is well settled that "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal citation omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* (internal citations omitted). Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment, and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

There is no question that Plaintiff's gunshot wound qualifies as an objectively serious medical need. Plaintiff's allegations, however, do not meet the second, subjective, prong of the deliberate indifference test. Plaintiff does not allege he was completely denied medical treatment by NPMC or NPMC medical staff for his gunshot wound. His sole claim is that they did not remove the bullet from his leg, and that they did so deliberately to cause him discomfort. The medical record indicates Plaintiff was seen in the Emergency Department of NPMC at 1:37 a.m. He was noted to be able to walk on his leg, reporting his pain intensity as a 2 on a 10-point scale. (*Id.* at 9, 10, 13). He alleges he was told by the NPMC medical staff that they could not see the bullet on the x-ray due to the swelling in his leg. The radiology report submitted by Plaintiff states "CTA thigh – no arterial injury, bullet not visualized." (ECF No. 1 at 10). The impression for the CTA scan states: "Soft tissue injury is demonstrated within the medial right thigh with hematoma

7

and soft tissue stranding in the mid thigh with bullet fragments overlying the medial proximal tibia within the subcutaneous tissues. No underlying vascular injury or bony injury is evident." (*Id.* at 12). The overall clinical impression upon exam was a gunshot wound and atrial fibrillation.[2] (*Id.* at 10). He was given keflex,[3] intravenous morphine,[4] cardizem,[5] and lopressor.[6] (*Id.* at 10).

Thus, Plaintiff was examined at the NPMC Emergency Department, and he received treatment for his right leg, including a CTA scan. He also received treatment for his cardiac condition. The CTA scan indicates a bullet could not be seen in Plaintiff's thigh. This is consistent with Plaintiff's allegation that NPMC medical staff told him they could not see the bullet in his leg. Instead, the scan indicated only fragments in the lower leg with no vascular or bony injury. Nothing in the medical record indicates the fragments should have been removed that night; instead, he was instructed to obtain follow-up care in two days. He was given an antibiotic and pain medication for his leg, and two drugs for his cardiac condition. The Court can discern no deliberate indifference in these facts. Instead, Plaintiff merely disagrees with the emergency treatment provided for his leg, which is not actionable under § 1983.

### IV. CONCLUSION

Accordingly, it is recommended that Plaintiff's Complaint be DISMISSED WITHOUT PREJUDICE.

---

[2] Atrial fibrillation is a rapid, irregular atrial heartbeat rhythm. Symptoms include palpitations and sometimes weakness, effort intolerance, dyspnea, and presyncope.
https://www.merckmanuals.com/professional/SearchResults?query=Atrial+Fibrillation+and+Atrial+Flutter&icd9=427.31%3b427.32 (last accessed July 24, 2018).

[3] Keflex is a cephalosporin antibiotic. http://www.pdr.net/drug-summary/Keflex-cephalexin-1565.5945 (last accessed July 24, 2018).

[4] Morphine is an opioid painkiller indicated for moderate to severe acute pain. http://www.pdr.net/drug-summary/Avinza-morphine-sulfate-2277.781 (last accessed July 24, 2018).

[5] Cardizem is a benzothiazepine calcium-channel blocker; primarily used for angina, HTN, PST, and ventricular rate control in AFIB; slows AV conduction; vasodilatory properties. http://www.pdr.net/drug-summary/Cardizem-diltiazem-hydrochloride-2077.8341 (last accessed July 24, 2018).

[6] Lopressor is a combination beta-blocker and thiazide diuretic used for hypertension. http://www.pdr.net/drug-summary/Lopressor-HCT-hydrochlorothiazide-metoprolol-tartrate-1803.8337 (last accessed July 24, 2018).

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 31st1st day of July 2018.**

/s/ *Mark E. Ford*

HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE